May it please the court. Good morning, Your Honors. My name is Pat Ehlers and I represent Reginald Burns, the appellant in this case. Mr. Burns, Your Honors, is serving 6.4 years in federal prison and he's appealing his conviction because he did not receive a fair trial. In this case, the court is looking at the trial court's exercise of discretion. The parties agree that there's broad discretion that the trial court has in assisting in the selection of a fair and impartial jury. But the trial court in this case did not exercise its discretion soundly. To show this to the court today, I'm going to point to two particular issues and one example in the record that was submitted by the government that I think proves this point. First, I'm going to point to the circumstances of this case. Then I'm going to move to the rationale that Judge Haggerty explained for his decision not to ask the questions that were asked by the defense about race and prior conviction of a felony. And then I'll get to the example. This is not a case where there was any direct evidence of possession of a weapon. That was the charge in this case. This is a circumstantial evidence case. In this case, the central point for both sides was the credibility of the law enforcement officer versus the credibility of the black criminal. That's what this case is about. Mr. Burns did not testify. He didn't take the stand. But his statements came through to the jury through the statements of the officer and through other witnesses. What Mr. Burns said is talked about throughout this record. And the jury had to decide who was more credible, the law enforcement officer or Mr. Burns. This case is pitting somebody who was a law enforcement officer for 19 years and when we were having a selection of this jury in the trial, Judge Haggerty unfairly, maybe unwittingly, but certainly unfairly, took his finger and put it on the scale in favor of the prosecution through the way he asked the questions. The only circumstance, I guess, that you point to as requiring that type of voir dire is the different race of the defendant and the officer, right? No, Your Honor. Both Officer Hollins, who was the police officer that I'm talking about, is African American, and Mr. Burns is African American. And so was the judge. And that's an interesting point, Judge Pegerson. Judge Haggerty is African American. He's sitting in a courtroom with numerous white prospective jurors. And he believes that by asking a general bias question, can you be fair, can you simply be fair and impartial, that a prospective juror is going to feel comfortable saying to Judge Haggerty in that courtroom, no, Judge, I have a problem with black people. Judge Haggerty, I believe, in this case, in these particular circumstances, and this is a unique case because this is the only African American judge in the Federal District of Oregon. He is in this courtroom introducing his staff to the jury. He is in absolute power within the courtroom. And I think in this particular case, with these circumstances, he had an obligation to foster his discussion about racial bias because no juror, in their right mind, would bring up their own racial bias against blacks to Judge Haggerty unless Judge Haggerty encouraged that question. That's a really important factor in this case. But there are other important factors, Your Honors, because this is a case where we're just looking at credibility. The government tried to present DNA evidence. They tried to present fingerprint evidence. They didn't have it. They tried to present a shirt wrapped around the gun. There was a question about whether it was a woman's shirt or a man's shirt. It turns out it was a woman's shirt. Police officers said that Mr. Burns said that it was his shirt initially and then switched his story. Jurors had to constantly assess credibility of what Mr. Burns said versus the law enforcement officer. But when we were trying to exercise perimeters in that courtroom intelligently and trying to pick a fair and impartial jury, only the government got to do that because Judge Haggerty repeatedly asked prospective jurors questions about what their feelings were about law enforcement officers. I want to take the Court to the Supplemental Exhibit Record, page number six. There's an example there that I think really points this out. There was a prospective juror, Mr. Lever. He was a Department of Corrections employee. He was asked the general fairness question. Can you be fair and impartial? His answer to Judge Haggerty was, of course I can. Let me get back to my question. Are you saying that in every case in which there is a black or otherwise minority defendant, that the Court is required to voir dire on race? No. Well, what's different about this case, then? What's different about this case, Your Honor, and what the Court tells us in Rosales-Lopez, what this Court has held in Sarkazian, and what this Court should be directed to do is look at this case, just like it would any other case, on a case-by-case basis, looking at the particular circumstances of this case. Well, what's the particular circumstances different from, you know, all other cases in which there are black defendants in Oregon? Here's an example, Your Honor. In this particular case, had the government had DNA evidence on the gun or on the shirt, I wouldn't have this argument. I couldn't make this argument to you. If the government had fingerprint evidence on the gun, I couldn't make this argument to you. This is a case where the credibility of the witnesses, the statements of Mr. Burns versus the statements of the law enforcement officer, were the whole case. There was no other evidence. There was physical evidence that they brought into the courtroom, but no connection between the defendant and the gun. So you had to either believe the officer. So your rule then is whenever there is a defendant, a criminal defendant of a minority race in which credibility is an issue, the Court is required to voir dire on a race. I'm not. Is that the rule? No. I'm not asking this Court. What is the rule? If you're a minority defendant, a minority judge, and a minority prosecutor, then you've got to ask that question. What are you saying? No, Your Honor. I'm not. What I'm saying is this. Tell us what you are saying. Okay. I will tell you this. What I'm saying is this. You can't make a bright-line rule. Rosales tells you you can't do that. I'm not asking you to do that. I'm asking you that in this particular circumstance, these particular facts, the Court should find that there was an abuse of discretion. The exercise of discretion was not sound in terms of what Judge Haggerty did because of the way he imbalanced the selection of the jury by allowing the prosecution here to have law enforcement questions, but in this particular case, not allowing race to be inquired in at all. So since your argument is that the standard of review is abuse of discretion, you're not raising this as a constitutional challenge, are you? No, it's not a constitutional challenge. It's, you know, under Rosales, Your Honor, this is an issue under the supervisory powers of the Supreme Court, and as Rosales said, this is going to be left to the sound discretion of the trial court, but it remains primarily the trial court's discretion subject to case-by-case review by the appellate courts. That's what we're asking the Court to do here, undertake the case-by-case review, and I just want to contrast Sarkazian with this case to show the Court the difference. In Sarkazian, there was a question about Russians and Armenians, but the trial court did, in addition to asking a general fairness question, can you be fair and impartial, ask the question, do you have problems with the issue that there are the Russian and Armenian defendants will be using interpreters in this trial? Do you have a problem with that? That supplemented and gave some preliminary information to the defendant about how people would react to the unique ethnic characteristics of those particular defendants in that case. They could, therefore, exercise their peremptories intelligently, and the trial court in that case did not abuse its discretion because the supplemental inquiry was added to by the additional question. That didn't happen here. Again, if the Court would look – I'm sorry. Judge Reimer, did you have a question? You didn't finish. Yes, I did. Go ahead. I just want to finish this one point. On supplemental exhibit record, page number 6, this prospective juror, Mr. Lever, answered the question initially that he could be fair. Then the Court said, do you have a problem with law enforcement? He said, I actually favor law enforcement. And then Judge Hagerty said, well, do you think now you can be fair after you've said that? And the juror said, well, no, now that I've actually said that, I can't be fair. The follow-up questions that Judge Hagerty asked unlocked that juror's bias that he was not aware of initially. That never took place. That kind of internal examination of bias never took place with any of the jurors with respect to the issue of race. That's what made this trial unfair. There was one question that the Court could have asked. Is there anything about your associations with African Americans which would make it difficult for you to be fair to Mr. Burns? One question. That's all the Court had to ask. It wouldn't have taken a lot of time. And Judge Hagerty's rationale was that, Your Honor, I think I'm running out of time. I just want to finish this point. Judge Hagerty's rationale was insufficient. What Judge Hagerty said was, because the jury can see Mr. Burns is black, they'll let us know if they have a problem. I'm going to ask a question about the telephone calls. Here, Judge Rember. Mine's a little bit off track. So if you're ‑‑ but if you're through, you did assert that there was no other evidence other than a credibility contest between law enforcement and ‑‑ and Burns. Is my recollection wrong that there were two telephone calls from Burns to Wright? So you heard Burns, in effect, confess? That's interesting that you raise that point, Your Honor. The answer to the question is the court did have ‑‑ the jury did have before it those telephone calls. The defense in this case was interpretation of the language used in those calls. There was never a direct statement that Mr. Burns possessed the weapon. There was use of words that were, as in the government's view, veiled indications that he possessed the weapon. The defense's view was that he was speaking of ‑‑ That didn't depend upon a credibility fight with law enforcement. Your Honor, we had a jury that we had vetted that was questioned about law enforcement. The jury was never vetted with respect to racial issues. And those transcripts ‑‑ I'm sorry? They were never ‑‑ Well, the jury was vetted with respect to the use of racial epithets. Epithets. Yes. The jury was questioned if they would have a problem with the use of the word nigger, and they were asked if they had a problem with the use of the word motherfucker. But that's all they were asked about. They never were asked about do you have ‑‑ I mean, if you look at the questions, the proposed questions the defense asked, there were several questions that asked him,  But none of those questions were asked. And again, just to finish, Your Honor, Judge Hagerty's rationale, completely insufficient. He said, because they can see he's black, they'll let us know if they can be fair. But when they could have seen Officer Hollins was a cop, why did we have to inquire about law enforcement? If we're going to do that, we should also do it with respect to race in these particular circumstances. Thank you, Your Honors. May it please the Court. Ethan Knight, appearing on behalf of the government. It is the government's position that defendant's case was in no respect about his race. It was about his constructive possession of a firearm. And for those reasons, government believes that the trial court did not have used its ample discretion when it declined to ask appellant's proposed water year questions. As a preliminary matter, I want to address what appellant's argument now is, and that is the sufficiency of the evidence should provide this Court some guidance in whether or not the district court should have asked the questions. First of all, of course, the voir dire process precedes the trial. So as a rule, it would be unworkable for this Court to tell the trial court it has to evaluate the quality of the evidence before trial to determine whether or not certain voir dire questions would be necessary or not. As a second matter, of course, the key evidence that the government offered at trial, and this can be found by the trial court in page 18 of the sentencing hearing, were the two phone calls from the defendant to Wright after he was in custody. That's what the evidence was at trial that the government relied on, and that's the evidence that, in fact, the trial court said was integral to the ultimate finding of guilt by the jury. Setting these things aside, the Court does have a workable rule to determine when questions about race are appropriate, and that was set forth in Rosales-Lopez. And really the test that we're talking about today is whether or not there are external circumstances in this appellant's case that indicate a possibility of racial or ethnic bias that would influence the jury's ability to evaluate the evidence. And there is nothing in the record that indicates that there were indeed external circumstances for this defendant in this case that show some indication of bias. And that is the key, I think, to analyzing whether or not it was appropriate and whether or not the Court views its discretion in not asking these questions. I think, effectively, what the appellant is asking this Court to do today is to adopt the per se rule, the per se rule that has been expressly rejected by Rosales and this Court prior to Rosales and afterwards in Sarkissian. There is nothing in the record that is unique in this case that suggests that there is something externally or with regard to the relationship between the parties that would indeed support whether or not these questions should have been asked by the district judge to the jury during the voir dire process. If the Court does not have any additional questions, I will submit the matter on the briefs and again reiterate that there is nothing in the record that supports the application of the external circumstances test to this defendant in this case.
judges: Pregerson, Rymer, Tashima